# EXHIBIT 1

Page 1

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                     ---o0o---

4    SA MUSIC LLC, et al.,           )
                                     )
5            Plaintiffs,             )Case No.
                                     )20-cv-2146-JSC
6    vs.                             )
                                     )
7    APPLE, LLC, et al.,             )
                                     )
8            Defendants.             )
     _____)

9

10                     ---o0o---

11            Videotaped Zoom Deposition of

12                   LISA ALTER

13            Friday, November 5, 2021

14                     ---o0o---

15

16

17

18

19

20

21

22

23   Katy E. Schmidt

24   RPR, RMR, CRR, CSR 13096

25   Veritext Job No.: 4866894

Page 2

1                    UNITED STATES DISTRICT COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                             ---o0o---

4     SA MUSIC LLC, et al.,          )
                                     )
5             Plaintiffs,            )Case No.
                                     )20-cv-2146-JSC
6     vs.                            )
                                     )
7     APPLE, LLC, et al.,            )
                                     )
8             Defendants.            )
      _____)

9

10            BE IT REMEMBERED that, pursuant to Notice, and

11    on Friday, the 5th day of November, 2021, commencing at

12    the hour of 8:10 a.m., thereof, in New York City, New

13    York, before me, KATY E. SCHMIDT, a Certified Shorthand

14    Reporter in and for the County of Yolo, State of

15    California, there virtually personally appeared

16

                              LISA ALTER

17

18    called as a witness herein, who, being by me first duly

19    sworn, was thereupon examined and interrogated as

20    hereinafter set forth.

21

22

23

24

25

```
                                           Page 12
 1         A.    Yes.
 2         Q.    And what steps did you take to prepare for
 3    your deposition today?
 4         A.    I reviewed my report.
 5         Q.    Did your review your report alone?
 6         A.    I reviewed my report alone, and then I spoke
 7    with Mr. Giskan, Mr. Levenson, and Mr. Schwartz.
 8         Q.    And when did you speak to Mr. Giskan,
 9    Mr. Levenson, and Mr. Schwartz?
10         A.    Yesterday and the previous day.
11         Q.    And when you spoke with counsel yesterday, did
12    you speak with all three, Mr. Giskan, Mr. Schwartz and
13    Mr. Levenson?
14         A.    No.
15         Q.    Who did you speak with yesterday?
16         A.    Mr. Levenson.
17         Q.    How long did you speak with Mr. Levenson for?
18         A.    A little over an hour.
19         Q.    And was that conversation over Zoom?
20         A.    Yes.
21         Q.    Was anyone else present over that Zoom besides
22    you and Mr. Levenson?
23         A.    No.
24         Q.    Did you review any documents in that Zoom with
25    Mr. Levenson?
```

```
                                                  Page 13
 1          A.   Yes.

 2          Q.   What documents did you review?

 3          A.   I believe they are Exhibit 1, 2, and --

 4          Q.   Ms. Alter, you hit the mute button.

 5          A.   Sorry.

 6               Exhibits 1, 2, and 3.

 7          Q.   And you're referring to exhibits to the report

 8     you submitted in connection with these cases?

 9          A.   Correct.

10          Q.   Did you review any other documents besides the

11     three exhibits to your report that you just mentioned in

12     your Zoom yesterday with Mr. Levenson?

13          A.   Yes.

14          Q.   And what other documents did you review?

15          A.   There are also I believe exhibits.  I'm not

16     sure what they're marked but they were short form

17     assignments.

18          Q.   And roughly how many such assignments do you

19     recall reviewing yesterday in your Zoom with

20     Mr. Levenson?

21          A.   Roughly three.

22          Q.   Did you review any other documents with

23     Mr. Levenson apart from those assignments and the

24     exhibits to your report?

25          A.   No.
```

Page 14

1          Q.    Now, you also mentioned a second meeting with

2     counsel, correct, in connection with your preparation

3     for your deposition today?

4          A.    Correct.

5          Q.    And when did that other meeting take place?

6          A.    I believe it was Wednesday.

7          Q.    And who did you speak with in that meeting on

8     Wednesday?

9          A.    Mr. Levenson.  And I honestly --

10               I'm sorry, Matt.

11               -- I don't remember if Mr. Schwartz was on or

12     not.

13         Q.    Was Mr. Giskan on that Wednesday meeting?

14         A.    I don't recall.  I met him once briefly.  I

15     don't recall if it was Wednesday.

16               MR. GISKAN:  It was.

17               THE WITNESS:  Okay.  Thank you.  Sorry.  It's

18     a really busy week.

19               MR. SATANOVE:  I understand.

20     BY MR. SATANOVE:

21         Q.    And did you review any documents in your

22     Wednesday meeting with counsel?

23         A.    Not that I recall.

24         Q.    Was anyone else other than counsel present

25     during that Wednesday meeting?

1      A.   Yes.

2      Q.   Do you recall which authorities those were?

3      A.   Not exactly.  I have to -- I'd have to go

4  through it in, and even then, I wouldn't be certain

5  because these are authorities that we have -- that I and

6  my firm has looked at consistently over the years.

7      Q.   Is there anything in this report that you

8  believe is inaccurate?

9      A.   No.

10      Q.   Okay.  If you could please turn to Section I

11  of the report, "Qualifications."

12      A.   Yes.  It's easier for me to look at a paper.

13  Then I can see you, so that's how it works.

14      Q.   So you have a paper copy of --

15      A.   A paper copy of my report, yes.

16      Q.   And is the statement you have not authored any

17  publications in the last four years still accurate?

18      A.   Yes.  I believe so.  I don't know the exact

19  date of the Diesel article publication.

20      Q.   So you didn't check the dates of your prior

21  publications before writing the statement that you have

22  not authored any publications in the last four years.

23           Is that correct?

24      A.   Yes.  Correct.  I might have...

25      Q.   And if you look at Section III, you see the

1    heading "Data or Information Used For This Report"?

2        A.   Yes.

3        Q.   Does this identify all the documents you've

4    reviewed in preparing your report?

5        A.   Yes.

6        Q.   You did not review any other documents

7    preparing this report other than the three documents

8    listed here?

9        A.   Correct.

10       Q.   Are you aware that counsel informed us

11   yesterday evening that you did review additional

12   documents in preparing your report that are not listed

13   here?

14       A.   Oh, yeah.  The short form assignments.

15   Forgive me.  I thought they were attached to these.

16       Q.   In addition to the short form assignments that

17   you're referencing, which we'll look at, are there any

18   other documents you reviewed in preparing this report

19   other than those listed here?

20       A.   No.

21       Q.   And so is it your testimony that you believe

22   that the short form assignments that you're referencing

23   were a part of the exhibits listed here?

24            MR. GISKAN:  Objection.  Form.  She answered

25   that.

1           But you can answer again.

2           THE WITNESS:  Yes.

3     BY MR. SATANOVE:

4       Q.   You relied on statutes in preparing this

5     report; correct?

6           MR. GISKAN:  Objection.  Form.

7           THE WITNESS:  The statutes are the background.

8     BY MR. SATANOVE:

9       Q.   Did you rely on the statutory provisions cited

10    in this report in offering the findings you provide in

11    this report?

12          MR. GISKAN:  Objection.  Form.

13          THE WITNESS:  I don't understand that

14    question.  I cited the statutes in background as

15    background information.

16    BY MR. SATANOVE:

17      Q.   All right.  Let's jump here to the very end of

18    this report.

19          MR. GISKAN:  What page?

20          MR. SATANOVE:  Page 12.

21    BY MR. SATANOVE:

22      Q.   And there is a statement of opinion you

23    provide here; correct?

24      A.   Correct.

25      Q.   And the first clause of the first sentence in

Page 48

1    that section states "Based on the above analysis of

2    applicable law"; correct?

3         A.   Correct.

4         Q.   And does the applicable law referenced here

5    include the law that is cited in your report?

6         A.   Yes.

7         Q.   And so is it correct that the opinions

8    provided in this paragraph are based on the analysis of

9    the law cited in this report?

10             MR. GISKAN:  Objection --

11             THE WITNESS:  They are based on the facts and

12   the situation with the law as the background, but it's

13   the application of the facts to the law.

14   BY MR. SATANOVE:

15        Q.   So it's fair to say that in this paragraph you

16   are applying the law to the facts that you reviewed in

17   drafting this report; correct?

18        A.   No.  I'm applying the facts to the law or the

19   facts for the law as background.  You turned it around.

20        Q.   What is the difference between applying law to

21   fact and applying fact to law?

22        A.   You tell me.

23        Q.   I ask the questions today, Ms. Alter.

24             You've --

25        A.   I have looked at the facts in the context of

```
                                                    Page 49
 1   the law.  That is my response.
 2        Q.   And you've analyzed the law in preparing this
 3   report; correct?
 4        A.   No.  That's incorrect.
 5             The law is the law.  There's a law that you
 6   can't cross the street on the red light.  You cross the
 7   street on the red light.  Applying that fact to the law,
 8   you have broken the law.
 9        Q.   Is it your testimony that you did not analyze
10   the law in preparing this report?
11        A.   I applied --
12             MR. GISKAN:  Objection.  Asked and answered.
13             Go ahead.
14   BY MR. SATANOVE:
15        Q.   You can answer.
16        A.   I applied the facts to the law.  This -- the
17   law in this area requires no analysis for the question
18   at hand.  I have applied the facts to the law.
19        Q.   So it's your testimony that you did not
20   analyze the law in writing this paragraph in your
21   report?
22             MR. GISKAN:  Objection.  Form.
23             THE WITNESS:  That's correct.
24             MR. SATANOVE:  That's correct.
25             THE WITNESS:  I applied the facts to the law.
```

```
                                                    Page 50
```

1    The law requires analysis.  It is there.

2             THE COURT REPORTER:  Excuse me.  I'm sorry.

3    It's very, very difficult to hear Ms. Alter.

4             For the sake of the record, do you happen to

5    have ear buds or headphones that might have a

6    microphone?  Anything we can do.  Because I'm not going

7    to be able to do this.

8             THE WITNESS:  Well, then I'm sorry.

9             I applied the facts to the law.

10             Maybe whatever we did last time was -- that

11    background noise made a difference -- trouble before.

12             THE VIDEOGRAPHER:  Ms. Alter, can we go back

13    to the auto suppress background noise?

14             THE WITNESS:  Yeah.  Hold on.

15             CONCIERGE JONES:  And if you're putting papers

16    between you and the laptop, there's a good chance that

17    it's blocking the microphone.

18             I don't know if you do have anything in your

19    hand but -- yeah.

20             THE WITNESS:  All right.  I'm back to the

21    other.

22             Is that better?

23             THE COURT REPORTER:  So the microphones are

24    directional so any movement of your head makes your

25    voice go away, and especially when there's talking over

```
                                              Page 51
 1    one another, then your voice goes away.

 2              MR. GISKAN:  I assume part of that is my

 3    fault.  It might go a little bit more slowly, but it

 4    will be a better recording if between the question and

 5    the answer, you just give me a second or two to speak

 6    and if I don't, continue.

 7    BY MR. SATANOVE:

 8        Q.   All right.  So, Ms. Alter, you previously just

 9    testified that you applied the facts to the law in

10    preparing this report.

11        A.   Correct.

12        Q.   Is it your testimony -- but it's your

13    testimony that you did not apply the law to the facts in

14    preparing this report?

15              MR. GISKAN:  Objection.  Form.

16              THE WITNESS:  My testimony is what I said.  I

17    applied the facts to the law.

18    BY MR. SATANOVE:

19        Q.   And in applying the facts to the law, is it

20    fair to say you also applied the law to the facts?

21        A.   No.  How many times are you going to ask me

22    that?

23              MR. GISKAN:  Why don't you ask her what she

24    did?

25    ///
```

```
                                                    Page 52
 1    BY MR. SATANOVE:
 2         Q.   I'm just trying to get a clear record,
 3    Ms. Alter.
 4              You've testified that in preparing your
 5    report, you applied the facts to the law, and you've
 6    also testified that in preparing this report, you did
 7    not apply the law to the facts.
 8              Is that correct?
 9         A.   I don't understand the distinction you're
10    making.  You're asking me to make it, but I don't
11    understand it.
12              So if you would like to give me an example, I
13    can address it.  Otherwise my testimony stands.
14         Q.   When I ask you if you applied the law to the
15    facts, is it your testimony that you don't understand
16    that question?
17         A.   I don't.  Because the law is straightforward
18    in this area.  There is no debate.  There are many areas
19    of the copyright law that involve an analysis of the
20    law.
21              This area just is.  Ownership is very
22    straightforward.  So I applied the facts to the law and
23    analyzed the facts in this situation.
24         Q.   Thank you.
25              Let's take a look at some of the exhibits to
```

```
                                                   Page 53
 1    your report.
 2         A.    I'll try to do that on this thing.
 3         Q.    Yeah.  The first one that we'll take a look at
 4    might not quite be there yet.
 5         A.    It's impossible.  I'm only getting a smidge of
 6    it.
 7         Q.    You should see an arrow bar or -- at the
 8    bottom of your screen that you can move it --
 9         A.    Yeah.
10         Q.    -- and you might be able to zoom in and out as
11    well.  If not, we can put it on the screen share.
12              MR. GISKAN:  Are we going to look at
13    Deposition Exhibit 5 first?
14              MR. SATANOVE:  That's correct.
15                    (Defendants' Exhibits 5 - 7 were
16                    marked for identification.)
17    BY MR. SATANOVE:
18         Q.    So, yeah, if you could please open the exhibit
19    that's marked as Exhibit 5.
20         A.    It is open.
21         Q.    Great.
22              I'm showing you Exhibit 1 to your report,
23    which is referred to in your report as the "Arlen Chain
24    of Title Report."
25         A.    Correct.
```

1      Q.    You did not create this document; correct?

2      A.    Correct.

3      Q.    Who did create this document?

4            MR. GISKAN:  If you know.

5            MR. SATANOVE:  Sorry.  I don't think the

6      audio was clear there.

7      BY MR. SATANOVE:

8      Q.    Who created this document?

9      A.    Our client.  My client.

10     Q.    When you say your client, you're referring to

11     the Schwartz -- Mr. Schwartz's law firm?

12     A.    Exactly.

13     Q.    You did not input any of the information in

14     this document; correct?

15     A.    Correct.

16     Q.    You did not take any steps to verify the

17     accuracy of any of the information in this document;

18     correct?

19     A.    I did some spot checking in the

20     U.S. Copyright Office online database.

21     Q.    Did you review documents in the

22     U.S. Copyright Office online database in connection

23     with the spot-checking you just referenced?

24     A.    No.  Not documents.  Registrations, renewal

25     registrations.

                                                          Page 55

1          Q.    You reviewed renewal registrations related to

2     Exhibit 1 to your report?

3          A.    Correct.  Spot checking.  Not every one,

4     but -- so, for example, the renewal registration is what

5     you would see in the Copyright Office database because

6     it only -- to the extent that a renewal was recorded

7     and -- you know, recorded in the database.  They would

8     not all show up but some do.

9          Q.    Did you keep a record of which renewal

10    registrations you reviewed in preparing this report?

11         A.    No, I did not.

12         Q.    Do you express any opinion in this report

13    about the accuracy of the information listed in this

14    exhibit?

15         A.    I assume that the information is accurate.

16         Q.    Do you intend to express any opinions in this

17    report about the renewal registrations you reviewed?

18              MR. GISKAN:  Objection.  Form.

19              THE WITNESS:  I don't understand the question.

20    BY MR. SATANOVE:

21         Q.    Are you expressing any opinion in this report

22    about the renewal registration documents that you

23    reviewed in spot-checking the information in this

24    report?

25              MR. GISKAN:  Objection.  Form.

```
                                                        Page 56
 1              THE WITNESS:  No.
 2      BY MR. SATANOVE:
 3          Q.   So you did not relay on the renewal
 4      registrations you reviewed in preparing this report?
 5              MR. GISKAN:  Objection.  Form.
 6              THE WITNESS:  I relied on the information
 7      contained in this report which I was provided.  I said I
 8      spot-checked to make sure that they -- that based on a
 9      random spot check, the information was correctly input
10      into this report, meaning renewal date and registration
11      number.
12      BY MR. SATANOVE:
13          Q.   But you are not expressing any opinion in this
14      report about whether the information in this report was
15      correctly inputted; correct?
16          A.   No.  That's correct.  I assumed that it is,
17      which is what I say.
18          Q.   I understand.
19              I'm just trying to understand the basis,
20      Ms. Alter, because I'm sure you understand that if you
21      relied on documents in making any opinions in this
22      report, you are obligated to disclose those documents
23      in this report?
24          A.   Correct.
25          Q.   And you state in section IV of your report
```

```
                                                    Page 57
 1    that:
 2                "In my opinion, the Arlen Chain of
 3           Title Report accurately sets forth the
 4           chain of title with respect to the
 5           Harold Arlen share of musical compositions
 6           written in whole or in part by Arlen."
 7                How do you know that this document accurately
 8    sets forth the chain of title with respect to every
 9    composition in this document?
10         A.   Because counsel provided information about
11    registrations, renewals, termination notices, and
12    assignments.
13         Q.   So just to be clear, when you say in your
14    report that it's your opinion that "the Arlen Chain of
15    Title Report accurately sets forth the chain of title,"
16    you are relying on the information that counsel inputted
17    into this document, which you did not independently
18    verify in its entirety.
19                Is that correct?
20         A.   That's correct.
21         Q.   And if you could turn to Exhibit 2 to your
22    report, which has been marked as Exhibit 6 in this
23    folder.
24         A.   Exhibit which?  Five?
25                MR. SATANOVE:  It should be --
```

```
                                                    Page 58
 1              MR. GISKAN:  Six.

 2              MR. SATANOVE:  -- marked as Exhibit 6.

 3              THE WITNESS:  Got it.

 4      BY MR. SATANOVE:

 5         Q.   All right.  I'm showing you Exhibit 2 to your

 6      report, which is referred to in your report as the

 7      Henderson Chain of Title Report, around when did you

 8      first review this document?

 9         A.   Late July to early August.

10         Q.   And you did not create this document; correct?

11         A.   Correct.

12         Q.   Is it your understanding that Mr. Schwartz's

13      law firm created this document?

14         A.   Yes.

15         Q.   And you did not input any of the information

16      in this document; correct?

17         A.   Correct.

18         Q.   Did you review any of the underlying documents

19      referenced in this report -- in this exhibit to your

20      report?

21         A.   No.  No.

22         Q.   And with respect to the prior exhibit that we

23      were looking at, the Arlen Chain of Title Report, did

24      you review any of the documents referenced in that

25      report?
```

```
                                                         Page 80
```

1    BY MR. SATANOVE:

2         Q.   And did you draft this article with the

3    assistance of the -- any other authors?

4         A.   No.  I might have had an associate do some

5    research, but, no, I drafted it myself.

6         Q.   If you go back to the beginning of the

7    article, there's a section on the very first page that's

8    labeled "Historical Background"; correct?

9         A.   Yes.

10        Q.   Okay.  And do you recognize the paragraphs

11   underneath that section from your report?

12        A.   Yes.  They are either similar or identical to

13   the background in the report.  This is the background

14   because I've told you that we've used -- I've used

15   multiple, multiple times over the years.

16        Q.   And when you drafted the portions in your

17   report that are reflected in this article, did you copy

18   them directly from this article or is it from another

19   document that you have?

20        A.   Not from this article, no.

21        Q.   So to the extent sections in your report are

22   identical to the paragraphs in this article, both would

23   have been taken from another document?

24        A.   Yeah.  I mean, or from notes that I have on

25   this topic.  I mean, again, as I've said, this is

Page 81

1    background information.  Until and unless the law

2    changes or is added to, I don't see the need to recreate

3    it.  It was prepared intentionally and thoughtfully.

4          Q.   I'm just trying to understand the source of

5    the material in your report.  That's all.

6          A.   Yeah.  It's all me.  It's not from this

7    article, though, because I just looked for this article

8    yesterday.

9          Q.   And so if you can go back to your report,

10   Ms. Alter.  You'll see Section 6, which includes

11   verbatim the entire section, the article we just looked

12   at, and then following that is Section 8, "Chain of

13   Title Review."

14         A.   What page?

15         Q.   It's page 8 of your report.

16         A.   Okay.

17              MR. GISKAN:  Is there a question?

18              MR. SATANOVE:  Not yet.

19              MR. GISKAN:  Oh, okay.  Sorry about that.

20              MR. SATANOVE:  No worries.

21   BY MR. SATANOVE:

22         Q.   And so, Ms. Alter, is it fair to say that the

23   sections proceeding Section 7 summarize copyright law

24   that you had written from other sources?

25         A.   They summarize copyright law -- copyright law,

Page 82

```
 1    and I have written this and used this language in
 2    multiple situations.
 3         Q.   And in Section 8, there is a group of
 4    assumptions listed here under the title "Assumptions";
 5    correct?
 6         A.   Correct.
 7         Q.   And then you have a footnote here,
 8    footnote 36, where you note that "The assumptions were
 9    based on information provided by plaintiffs' counsel and
10    have not been subject to independent review."
11         A.   Correct.
12         Q.   When you say "independent review," you're
13    referring to any review conducted by yourself or anyone
14    working for you at your law firm; correct?
15         A.   That is correct.
16         Q.   Okay.  And you relied on the assumptions here
17    in drafting the findings in the next section; correct?
18         A.   Correct.
19         Q.   And you consider these assumptions to be
20    material to your findings?
21         A.   Yes.
22         Q.   If any of your assumptions turned out to be
23    false, that would change your findings; correct?
24              MR. GISKAN:  Objection.  Form.
25              THE WITNESS:  Potentially.
```

```
                                                    Page 83

 1    BY MR. SATANOVE:

 2         Q.    My apologies, Ms. Alter.  I'm not sure I got

 3    the audio on your response there.

 4         A.    Potentially.  Possibly.  Potentially.

 5         Q.    Possibly.

 6         A.    Depends on what -- on what was incorrect or

 7    false.

 8         Q.    And if a statement under the "Assumptions"

 9    section was incorrect, that would change how the law

10    applies to the assumption; correct?

11         A.    Possibly.

12         Q.    And that in the next section, at the bottom of

13    page 9, it states "Chain of title in subject Henderson

14    compositions," and the assumptions here again were not

15    verified by you, correct, for their truth?

16         A.    Correct.

17         Q.    And you consider these assumptions to be

18    material to your findings in the next section; correct?

19         A.    Correct.

20         Q.    And if any of these assumptions turned out to

21    be inaccurate, that might affect your findings in the

22    next section; correct?

23         A.    Possibly.

24         Q.    And is your testimony the same with respect to

25    the assumptions listed in the "Warren Composition"
```

```
                                                    Page 87
 1              MR. GISKAN:  Objection.  Form.
 2              THE WITNESS:  Again, I assumed these were
 3     validly filed based on the fact that the information was
 4     they were served by the parties who I was told served
 5     them, the author in some case, statutory errors, that
 6     the statutory errors were the statutory errors and
 7     constitute a majority of statutory errors; that they
 8     were not challenged by the recipient and, in fact, were
 9     being claimed by the various entities who -- you know,
10     family-related entities who would come in after the
11     effective date of termination.
12         Q.   All of these assumptions are based on the
13     information provided to you by counsel; correct?
14         A.   Correct.
15         Q.   All right.  If we can turn to the exhibit in
16     the Marked Exhibits folder that begins Exhibit 0009.
17              And you reviewed this document in preparing
18     your report; correct?
19         A.   Correct.
20         Q.   And this is the -- sorry.  I wasn't sure if
21     you finished your answer.
22         A.   I know it's hard to -- every time I try to
23     zoom it in, it jumps off the page.  Yes.  Correct.
24         Q.   And it's signed by Sam Arlen at the bottom;
25     correct?
```

```
                                                  Page 88
 1         A.    Correct.
 2         Q.    Okay.  Besides this document, you did not
 3    review any of the other documents referenced in the
 4    Arlen Chain of Title Report; correct?
 5         A.    Correct.
 6         Q.    And if you could turn to the next exhibit,
 7    which is Exhibit 10.
 8         A.    I have to get out of this thing.  I don't know
 9    why.  Wait.  Hold on.  Okay.  Hold on.
10              I'm not -- oh, okay.  I have it.  Sorry.
11         Q.    All right.  Do you recognize this document?
12         A.    Yes.
13         Q.    And you reviewed this document preparing your
14    report; correct?
15         A.    Yes.
16         Q.    And in the first paragraph there, do you see
17    where it references an assignment?
18         A.    Yes.
19         Q.    You consider this document itself to be an
20    assignment?
21         A.    No.
22         Q.    Would it be more accurate to characterize this
23    document as one representing the copyrights had been
24    previously assigned?
25         A.    Yes.  It's a letter of instruction or
```

```
                                                    Page 89
 1    direction to ASCAP.

 2         Q.   And you have never seen the assignment that's

 3    referenced in this document; correct?

 4         A.   Correct.

 5         Q.   Okay.  And you can now turn to -- actually,

 6    before I turn to the next exhibit, I do have one more

 7    question.

 8              Besides the document that we just looked at,

 9    you did not review any of the other documents referenced

10    in the Henderson Chain of Title Report; correct?

11         A.   Correct.

12         Q.   All right.  The next document should be marked

13    as Exhibit 11.

14              MR. GISKAN:  I'm sorry.  Which number?

15              MR. SATANOVE:  It should be Exhibit 11, Oren.

16              MR. GISKAN:  Oh, okay.  Yep.  I see it.

17    Sorry.

18    BY MR. SATANOVE:

19         Q.   And you're familiar with this document;

20    correct, Ms. Alter?

21         A.   Yes.  This is the one we just looked at.

22         Q.   Oh.  It shouldn't be.  We should now be

23    looking at the document marked Exhibit 11.

24         A.   Sorry.  Yeah.  I was in Exhibit 13.  Hold on.

25    Where's 11?
```

```
 1              Okay.  I apologize.  I have it.
 2       Q.    Great.
 3              You're familiar with the document; correct?
 4       A.    Yes.
 5       Q.    When is the first time you reviewed this
 6   document?
 7       A.    I believe over the summer.  But I'm not -- I
 8   can't give you an exact date.
 9       Q.    You have no recollection of reviewing this
10   document in connection with your 2015 engagement with
11   Four Jays.
12              Is that your testimony?
13       A.    I don't recall.
14       Q.    You reviewed this document again in drafting
15   your report; correct?
16       A.    Correct.
17              MR. GISKAN:  Objection.  Form.  She didn't say
18   she had previously reviewed it.  You did.
19              THE WITNESS:  I reviewed it over the summer.
20   I don't recall if I previously reviewed this.
21   BY MR. SATANOVE:
22       Q.    You reviewed it over the summer and then you
23   reviewed it again in drafting your report.
24              Is that correct?
25       A.    I reviewed it over the summer in drafting my
```

Page 106

1                    REPORTER'S CERTIFICATE

2                         ---o0o---

3   STATE OF CALIFORNIA    )

                           ) ss.

4   COUNTY OF YOLO         )

5          I, KATY E. SCHMIDT, a Certified Shorthand

6   Reporter in and for the State of California, duly

7   commissioned and a disinterested person, certify:

8          That the foregoing deposition was taken before me

9   at the time and place herein set forth;

10         That LISA ALTER, the deponent herein, was put on

11  oath by me;

12         That the testimony of the witness and all

13  objections made at the time of the examination were

14  recorded stenographically by me to the best of my

15  ability and thereafter transcribed into typewriting;

16         That the foregoing deposition is a record of the

17  testimony of the examination.

18         IN WITNESS WHEREOF, I subscribe my name on this

19  22nd day of November, 2021.

20

21         _____

           Katy E. Schmidt, RPR, RMR, CRR, CSR 13096

22         Certified Shorthand Reporter

           in and for the

23         County of Sacramento,

           State of California

24

25  Ref. No. 4866894 KES