# EXHIBIT 8



## Protecting Your Musical Copyrights

What is a musical composition? A series of notes and chords? Words and melody? Poetry and rhythm? A musical composition may mean different things to different people, but according to United States copyright law a musical composition is an original work of authorship fixed in a tangible medium of expression.[1] Compositions are a type of intellectual property, protected by copyright. Copyright protection extends to the musical work, including both music and lyrics, but not to the idea that gives rise to or is expressed by the composition. A copyright in a musical composition vests in the owner a myriad of privileges and protections codified in the copyright laws of individual countries as well as international treaties and conventions. This publication focuses primarily on those sections of the United States Copyright Act (the "Copyright Act") most relevant to authors, owners, and licensees of musical compositions.

United States copyright law can be extremely complex; however it is important that those with an interest in a musical composition, including authors, heirs, music publishers, and administrators, have a basic understanding of the key aspects of the law in order to effectively protect and exploit their musical property. This handbook sets forth fundamental guidelines for the safeguarding of your copyrights from creation until the date each composition enters the public domain. The handbook is intended as an overview. For a specific understanding of the application of the principles contained herein to your own catalogue, you should consult with a copyright attorney and review the more detailed information available from the Copyright Office.[2]

## Copyright—An Overview

### Subject Matter of Copyright

The Copyright Act grants copyright protection to 8 categories of "original works of authorship" including:

literary works;

musical works, including any accompanying words;

dramatic works, including any accompanying music;

pantomimes and choreographic works;

pictorial, graphic, and sculptural works;

motion pictures and other audiovisual works;

sound recordings; and

architectural works.[3]

### Sound Recordings

Sound recordings created before February 15, 1972 are not subject to federal copyright protection. Pre-February 15, 1972 sound recordings are typically protected under state statutes and common law. Sound recordings fixed on or after February 15, 1972 are protected under the Copyright Act. These sound recordings enjoy copyright protection that is distinct from the protection accorded to the individual compositions embodied in the sound recording. A transfer of rights in a sound recording does not convey rights in the compositions or other copyrighted works embodied in the sound recording.[4]

### Authors of Copyrighted Works

The term "author" is not expressly defined in the Copyright Act, other than with respect to works made for hire (where the employer is deemed to be the author).[5] While it is generally understood that the author of a book is a person or persons who wrote the words and/or illustrated the book, and the author of a composition is the person or persons who wrote the music and/or lyrics, there is debate over who constitutes the author(s) of a sound recording.

### Copyright Ownership

Copyright ownership of a work vests in the author or authors of the work upon its creation.[6] Authors of joint works are co-owners of the copyright. Authors of works contributed to collective works own the copyright only in their contribution, which is distinct from the copyright in the collective work as a whole. In the case of a work made for hire, absent an agreement to the contrary, the employer will own all rights in the work.[7]

### Joint Works

In the United States, a composition written by two or more authors is generally deemed to be a "joint work," which is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."[8] Ownership of joint works is presumed to be shared equally by the authors, absent an agreement to the contrary. Each author of a joint work is free to enter into a nonexclusive license for the entire work, provided that the author issuing the license accounts to his or her co-author(s). In some cases, co-authors enter into an agreement among themselves, agreeing to work cooperatively in issuing licenses. As a practical matter, licensees of music publishing rights often insist on obtaining approval on behalf of each author of a work even if the grant of rights is non-exclusive.

### Scope of Copyright Ownership

Section 106 of the Copyright Act[9] lists six exclusive rights of the copyright owner, which include the rights:

1. to reproduce the copyrighted work in copies or phonorecords;
2. to prepare derivative works based upon the copyrighted work;
3. to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
4. in the case of literary, musical, dramatic, and choreographic works, to perform the copyrighted work publicly;
5. in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
6. in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.[10]

### Transfer of Copyrights

Copyright ownership may be transferred through assignments and contracts made by the original or subsequent copyright owner, or may be bequeathed by will. If an author or current copyright owner passes away leaving an estate that includes works under copyright, ownership will pass either to the beneficiary designated in the author/owner's will or, if there is no will, to the author/owner's legal heirs.

## Works Made For Hire

### What Are Works Made For Hire?

Works made for hire are works of authorship that are deemed to be created by an employer (who may be an individual or an entity) although the actual act of creation is done by one or more other individuals. According to case law, pre-1978 works made for hire are works prepared by an employee within the scope of his or her

employment. The work made for hire status of works created on or after January 1, 1978 is determined based on the two-prong test outlined in the Copyright Act.[11] In order to qualify as a work made for hire, the work must:

1. be a work prepared by an employee within the scope of his or her employment; OR
2. be a work specially commissioned for use as a contribution to one of nine enumerated categories where the parties expressly agree in writing that the work shall be considered a work made for hire.

### Works Prepared by An Employee Within the Scope of Employment

The first prong of the work made for hire test has been the subject of judicial review. The case law indicates that the courts will evaluate "the hiring party's right to control the manner and means by which the product is accomplished."[12] In undertaking such an examination, the United States Supreme Court cited the following general agency criteria:

- The skill required;
- The source of the instrumentalities and tools;
- The location of the work;
- The duration of the relationship between the parties;
- Whether the hiring party has the right to assign additional projects to the hired party;
- The extent of the hired party's discretion over when and how long to work;
- The method of payment;
- The hired party's role in hiring and paying assistants;
- Whether the work is part of the regular business of the hiring party;
- Whether the hiring party is in business;
- The provision of employee benefits; and
- The tax treatment of the hired party.

### Works Specially Ordered or Commissioned

Under the second prong of the work made for hire test, a work specially commissioned for one of the following uses will be deemed a work made for hire <u>provided that the parties agree in writing that the work is being prepared as such:</u>

- As a contribution to a collective work;
- As part of a motion picture or other audiovisual work;
- As a translation;
- As a supplementary work;
- As a compilation;
- As an instructional text;
- As a test;
- As answer material for a test; or
- As an atlas.[13]

---

1. 17 U.S.C. § 102(a).
2. Address your inquiries to the Library of Congress, Copyright Office, 101 Independence Ave. S.E., Washington D.C. 20559-6000; telephone (202) 707-3000; website www.copyright.gov.
3. 17 U.S.C. §102.



**Copyright Duration**

## Bifurcated Duration Provisions Under US Copyright Act

The United States copyright law is unique in that the duration of the copyright differs depending on the date of creation of the work, as well as the date the work is initially registered or published.

**Pre-1978 Works**

Works created and copyrighted (that is, registered or published) prior to January 1, 1978, are protected for 95 years from the date the copyright was originally secured (95 years from the earlier of the registration or publication). The 95-year period is divided into an initial term of 28 years and a renewal term of 67 years.[1]

Works created prior to January 1, 1978, that were neither copyrighted nor fell into the public domain before that date are protected for the life of the author plus 70 years, provided (i) in no event shall the term of the copyright in such a work expire before December 31, 2002, and (ii) if such a work is published on or before December 31, 2002, the term of the copyright shall not expire before December 31, 2047.[2]

Works registered for copyright or published prior to January 1, 1923, are in the public domain in the United States.

**Post-1977 Works**

Works created on or after January 1, 1978, are protected for the life of the author plus 70 years. In the case of a joint work, protection continues for 70 years after the death of the last surviving author.[3]

**Anonymous Works; Pseudonymous Works; Works Made for Hire**

The copyright term for an anonymous or pseudonymous work as well as a work made for hire endures for the shorter period of either 95 years from publication or 120 years from creation.[4]

**Discrepancy in Duration Provisions**

It is generally believed that the term of protection for works registered or published prior to January 1, 1978, is roughly equivalent to the term of protection for works created on or after that date. However, this is often not the case. Imagine, for example, a 20-year-old author who creates a composition and registers it for copyright in 1960. The author dies at the age of 85 in 2025. The song registered in 1960 will enter the public domain in the United States on January 1, 2056, just 30 years after the author's death. Compare this to a 20-year-old author who creates a composition and registers it for copyright in 1980. The author also dies at the age of 85, in 2045. The song registered in 1980 will enjoy copyright protection until 2116—a full 40 years longer than the song from 1960. Clearly, the bifurcated duration provisions have not accorded the earlier author or his/her heirs protection equivalent to the life-plus-70 protection accorded authors of works created on or after January 1, 1978.

## Registration and Renewal of Copyrights

**Registering Works**

Original works may be registered with the Copyright Office at any time after their creation. Although copyright is now secured automatically upon the creation of a work even if no registration is made, it is advisable to officially register a copyright with the Copyright Office in order to establish priority as well as to document title. To register a musical work, request Application Form PA from the Copyright Office and return it with the requested material. You may also print out and fill in Form CO from the Copyright Office website and send it in with the requested material. The fee for both types of registration by mail is currently $65. In addition to these two methods, the Copyright Office allows you to register works online using the eCO Online System. This option provides the fastest processing times and currently costs $35. For a tutorial on how to use this system and more information about registering works visit the eCO Page of the Copyright Office's website at www.copyright.gov/eco/index.html.

### Renewing Copyrights

The process of copyright renewal applies only to works registered or published before January 1, 1978. Works registered or published prior to January 1, 1964, must have been formally renewed (i.e., a renewal application must have been registered with the Copyright Office during the 28th year of copyright). Failure to renew caused the work to enter the public domain upon the expiration of the initial 28-year term of copyright.

Works originally registered or published between January 1, 1964, and December 31, 1977, benefit from automatic copyright renewal. Although the filing of a renewal application was not mandatory for these works, there were several advantages to filing renewals with the Copyright Office. A renewal registration in the 28th year records the interest of the renewal claimant in the work for the renewal term. Additionally, a renewal certificate can serve as prima facie evidence of copyright and allow the claimant to object to the creation of an unauthorized derivative work. Most significantly, with respect to posthumous renewal, the timely filing of a renewal application by the heirs of the author, where the heirs were not party to a prior renewal term grant, ensures that prior licensees shall not be entitled to continue to exploit either the original work or derivative works based thereon without the permission of the heirs.

### Publication of Copyrighted Works

Publication is defined in the Copyright Act as the "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[5] Since January 1, 1978, the distribution of a composition on a sound recording has constituted publication. The simple public performance of a composition does not constitute publication. The date of publication of a work may be significant in determining the duration, as well as statutory termination windows, of the work.

1. 17 U.S.C. §304(a).
2. 17 U.S.C. §303.
3. 17 U.S.C. §302.
4. 17 U.S.C. §302.
5. 17 U.S.C. §101.

Go to Next: Vesting of Renewal Term Rights in Pre-1978 Works

- Introduction and Copyright Overview
- What Are Music Publishing Rights?
- Copyright Duration
- Vesting of Renewal Term Rights in Pre-1978 Works

- Statutory Termination of Transfers/"Recapturing Copyrights"
  - Pre-1978 Grants
  - Post-1977 Grants
  - Termination by the Heirs of a Deceased Author
  - Statutory Termination Provisions Are Limited to the United States
  - Falling Between the Termination Cracks
  - Re-assignment of Terminated Rights
  - Termination Rights and Sound Recordings
- Contractual Termination
- The Implications of Foreign Copyright Law
- British Reversionary Right
- Concluding Thoughts for Authors, Heirs and Publishers

Alter, Kendrick & Baron, LLP
156 Fifth Avenue, Suite 1208
New York, New York 10010
Site © 2018 Alter, Kendrick & Baron, LLP

Telephone: (212) 707-8377
Facsimile: (212) 647-8317
info@akbllp.com
Attorney Advertising



## Vesting of Renewal Term Rights in Pre-1978 Works

### Ownership of Renewal Term Rights When Author Survives the Renewal Term

If an author lives into the renewal term of copyright, the ownership of the renewal term rights rests with the author unless the author has entered into an agreement transferring renewal term rights. If the author conveyed rights to a music publisher for the full term of copyright, including renewals and extensions thereof, the music publisher will continue to own the work in the renewal term subject to the applicable statutory termination provisions. If the author granted rights only for the initial term of copyright, rights will revert to the author on the commencement of the renewal term of copyright.

### Effect of Author's Death During the Initial Term of Copyright

If an author dies before the end of the 28th year of copyright, the renewal term rights automatically vest in the author's heirs (which may include the widow/widower or children of the author, the author's executor(s), or the author's next of kin) regardless of whether the author assigned the renewal term of copyright to a third-party prior to his or her death.[1] A limited exception to this rule occurs if the author properly renewed the copyright during the 28th year of copyright, assigned the renewal term rights in the composition during that year, and subsequently died. In this limited circumstance, renewal term rights will remain with the assignee.

In general, when an author dies during the initial term of copyright, an assignee of the author such as a music publishing company may not rightfully claim the copyright during the renewal term unless (i) the author's heirs were party to an initial grant of renewal term rights, or (ii) the author's heirs subsequently assign the copyright for the renewal term to the music publisher.[2] If an heir fails to advise the music publisher that the heirs have secured the renewal copyright and are reclaiming renewal term rights, the publisher may continue to collect on copyrights in the renewal term.

Even when an author's heirs were signatory to a grant of renewal term rights, where an author leaves multiple heirs, it is important to ascertain if all of the heirs were actually party to the grant. For example, if an author's wife and two children signed a renewal term contract, but the author's youngest daughter was not yet born, the youngest child will be able to claim her share of the renewal term rights even though the grant will subsist with respect to her mother and siblings.

While no explicit statutory notice requirements or procedures are prescribed in order to claim a renewal interest, the failure to make a timely claim may limit retroactive recovery. Accordingly, heirs should "claim" their rights in the renewal copyright as soon as possible by sending letters of notification to the music publisher as well as the applicable performing and mechanical rights organizations. It is important to note that the vesting of renewal term rights in an author's statutory heirs applies only to such rights in the United States. While the statute does not limit the territorial scope of the reversion of rights, custom in the industry limits the scope of the reversion because the notion of a renewal term of copyright is unique to the United States.

The foregoing rules regarding the vesting of renewal term rights in the author's statutory heirs apply with respect to all exclusive and non-exclusive grants of copyright other than works made for hire and grants made by will.

1. Section 304(a)(1)(C) of the U.S. Copyright Act designates the persons entitled to renew a copyright

registration in the event that the author has died prior to the commencement of the renewal term: "(ii) the widow, widower, or children of the author, if the author is not living, (iii) the author's executors, if such author, widow, widower, or children are not living, or (iv) the author's next of kin, in the absence of a will of the author." 17 U.S.C. § 304(a)(1)(C).

2. See Stewart v. Abend, 495 U.S. 207, 219-20 (1990).

Go to Next: 5a: Statutory Termination of Transfers/"Recapturing Copyrights": Pre-1978 Grants

- Introduction and Copyright Overview
- What Are Music Publishing Rights?
- Copyright Duration
- Vesting of Renewal Term Rights in Pre-1978 Works
- Statutory Termination of Transfers/"Recapturing Copyrights"
  - Pre-1978 Grants
  - Post-1977 Grants
  - Termination by the Heirs of a Deceased Author
  - Statutory Termination Provisions Are Limited to the United States
  - Falling Between the Termination Cracks
  - Re-assignment of Terminated Rights
  - Termination Rights and Sound Recordings
- Contractual Termination
- The Implications of Foreign Copyright Law
- British Reversionary Right
- Concluding Thoughts for Authors, Heirs and Publishers